UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ronald Miller,

    Plaintiff,

v.                                    Case No. 13-11748

Commissioner of Social Security,       Sean F. Cox
                                              United States District Court Judge

    Defendant.
_____/

**OPINION AND ORDER ADOPTING IN PART
THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
AND DISMISSING PLAINTIFF'S CAUSE OF ACTION**

        Plaintiff Ronald Miller ("Plaintiff") brought this action challenging the Commissioner's unfavorable decision disallowing benefits. The matter was referred to Magistrate Mona K. Majzoub for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1) and Report and Recommendation pursuant to § 636(b)(1)(B) and (C). Thereafter, the parties filed cross-motions for summary judgment.

## I. REPORT AND RECOMMENDATION

        In a twenty-two page Report and Recommendation ("R&R") issued on February 24, 2015, Magistrate Judge Majzoub recommended that this Court: 1) Grant in Part and Deny in Part Plaintiff's Motion for Summary Judgment; 2) Deny the Commissioner's Motion for Summary Judgment, and 3) Remand this matter for clarification of the identities of James White, NP, and James White, M.D., and a reassessment of Dr. White's opinion in accordance with the result of that inquiry.

1

Pursuant to FED. R. CIV. P. 72(b), a party objecting to the recommended disposition of a matter by a Magistrate Judge must file objections to the R&R within fourteen (14) days after being served with a copy of the R&R. "The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." *Id*. Both parties filed timely objections to the R&R. (*See* Docket Entry Nos. 24 and 25).

## II. ANALYSIS

After a thorough review of the court file, the Report and Recommendation, and the objections to the Report and Recommendation filed by Plaintiff and Defendant, for the reasons that follow, this Court:

      A.    Adopts Sections II, III, IV, and V.A.-B., V.C.1.a., V.C.1.c, V.C.1.d., V.C.2., V.C.3, and V.C.4. of the Report and Recommendation and incorporates by reference into this Opinion those portions of the Report and Recommendation;

      B.    Declines to adopt the balance of the Report and Recommendation; and

      C.    For the reasons that follow, concludes that Plaintiff's motion for summary judgment must be denied, Defendant's motion for summary judgment must be granted, and Plaintiff's cause of action must be dismissed with prejudice.

**A.    Plaintiff's Objections**

Despite being ordered to label his objections to the R&R, Plaintiff failed to do so. Therefore, the Court will address what appear to be his objections. Plaintiff argues that Defendant has the burden of proving that there is work available in the economy that Plaintiff can perform and that Defendant cannot meet that burden. In support of his argument, Plaintiff relies on: (1) the Global Assessment of Functioning ("GAF") scores that two doctors assigned to Plaintiff, and (2) the conclusions of other health care professionals relative to Plaintiff's ability to work. Plaintiff first

notes that the Vocational Expert testified that a GAF score of 50 or below would preclude all jobs in the marketplace that Plaintiff could perform. Plaintiff represents that Dr. Vila and Dr. Imasa both opined that Plaintiff's GAF score is 50; therefore, Plaintiff argues that he would be precluded from all jobs in the marketplace that he can perform. Plaintiff also cites the conclusions of "Dr. James White and James White, M.D." and Karen Jordon, MSW, each of whom opined that Plaintiff was disabled. The Court is not persuaded by Plaintiff's arguments.

As the Sixth Circuit recently stated, an ALJ must properly discuss the weight the ALJ gives a treating physician's opinion regarding disability, and:

> [t]his requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that []he is not."

*Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004)). In other words, "the real issue is whether the Commissioner both had, and adequately articulated, a valid rationale for not accepting [a doctor's] statement that plaintiff was disabled from a combination of his physical ... disorders." *Daniels v. Comm'r of Soc. Sec.*, 2011 WL 2110145, at *2 (S.D. Ohio 2011).

The ultimate issue of disability, however, is reserved to the Commissioner and not the treating or examining physicians. *Kidd v. Comm'r*, 283 F. App'x 336, 341 (6th Cir. 2008). GAF scores are relevant, but not controlling, for purposes of an ALJ's evaluation of a person's residual function capacity and, therefore, disability. *See, e.g., Pellow v. Astrue*, No 09-11587, 2010 WL 1626396, at *5 (E.D. Mich. Mar. 31, 2010) (Morgan, M.J.) ("Plaintiff's GAF scores are a relevant part of her mental health history, but the GAF scores are by no means controlling, nor is there any

3

law, regulation, or controlling case law that requires that the scores receive significant weight in the ALJ's evaluation of her residual function capacity."). Likewise, as "the Sixth Circuit has observed, 'no statutory regulatory, or other authority requir[es] the ALJ to put stock in a GAF score.'" *Blavatt v. Comm'r of Soc. Sec.*, No. 10-10930, 2011 WL 836805, at *9 (E.D. Mich. Feb. 4, 2011) (Randon, M.J.) (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (modification in original), citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

In this case, as explained by Magistrate Judge Majzoub, there was substantial evidence to support the ALJ's conclusion that the GAF scores of 50 assigned by Dr. Vila and Dr. Imasa — and the opinions on disability rendered by health care professionals James White and Karen Jordon, MSW — were not supported by the medical and factual record. Most significantly, in concluding that Plaintiff was not disabled, the ALJ relied on Plaintiff's testimony and a May 23, 2006 function report "in reasoning that Plaintiff took his children to school, socialized with family and friends, and attended church on Sunday and Wednesday."

The Court finds that Plaintiff's reliance on the Mental Residual Function Capacity ("RFC") Assessment conducted by "Dr. James White, M.D." is misplaced, at best, and possibly disingenuous. In her R&R, Magistrate Judge Majzoub recommended that this case be remanded because it was unclear whether: (a) James White, NP and James White, M.D. were the same person, and (b) Dr. White is Plaintiff's treating psychiatrist and the answers to those questions "are necessary for the Court to conduct a meaningful review of the ALJ's assessment of Dr. White's opinion." Despite that recommendation, Plaintiff (who presumably saw the individual(s) who treated him) does not clarify in his Objections: (1) who "Dr. James White" is, (2) if Plaintiff saw one or two health professionals named "James White," or (3) whether any person going by the name "James White"

4

was a treating psychiatrist for Plaintiff.

The Court finds, as Magistrate Judge Majzoub noted, that the signatures for "James White, NP" (the person who treated Plaintiff for medical concerns) and the alleged "Dr. James White, M.D." (who completed the Mental RFC Assessment) are "substantially similar." Like Magistrate Judge Majzoub, the Court also finds it unlikely that Plaintiff was treated and evaluated by two different medical providers named James White during the same period. A simple check of licensed health professionals on the State of Michigan, Department of Licensing and Regulatory Affairs website, confirms that "James White, Jr." of Rochester Hills holds (or, more accurately, held) both a Nurse Practitioner license and a Limited Psychology license.[1] Notably, the Limited Psychology license issued to "James White, Jr." of Rochester Hills was voluntarily and permanently surrendered by "James White, Jr." pursuant to a consent order entered into with the Michigan Board of Psychology (executed by an Assistant Attorney General for the State of Michigan, "James White, Jr., L.L.P." and the attorney for James White, Jr.). The basis for the consent order was that the Limited Psychology license issued to "James White, Jr." had previously expired on August 31, 2009. In fact, no one with a first name "James" and last name "White" is licensed as a medical doctor (M.D.) or psychiatrist in the State of Michigan. Therefore, the Court finds that the person who completed Plaintiff's Mental RFC Assessment could not have been a licensed medical doctor or psychiatrist. Rather, at best, Plaintiff's Mental RFC Assessment was completed by a nurse practitioner/social worker/unlicensed limited psychologist.

For the above reasons, the Court finds that the person who completed the Mental RFC

---

[1] The State of Michigan has also issued James White, Jr. of Rochester Hills a Social Work license. The Social Work license, like the Nurse Practitioner license, remains active.

Assessment for Plaintiff cannot be considered Plaintiff's treating psychiatrist. Accordingly, the ALJ did not have to give complete deference to the Mental RFC Assessment, nor does this Court. Further, as the ALJ explained that "Dr. White's" opinion was given limited weight because Plaintiff was able to take his children to school and help them with their homework, attend church twice a week, read a lot, watch television, listen to music, and socialize with family and friends (*i.e.*, substantial evidence supported her conclusion), the Court is not persuaded that it should reject the ALJ's conclusion regarding the opinion of "Dr. White."

For the reasons discussed in this Section, the Court declines to adopt Magistrate Judge Majzoub's recommendation to remand this matter to Defendant. Rather, because the Court finds that the ALJ's reasoning for giving limited weight to "Dr. White's" opinion — and for rejecting Plaintiff's claim of disability — is supported by substantial evidence, the Court concludes that the appropriate disposition of this matter is to grant Defendant's motion for summary judgment and dismiss Plaintiff's cause of action with prejudice.

**B.      Defendant's Objections**

Based on the Court's conclusions above, Defendant's objections to the R&R are rendered moot.

### III.  CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the Court ADOPTS IN PART and REJECTS IN PART the February 24, 2015 Report and Recommendation. Specifically, the Court ADOPTS Sections II, III, IV, and V.A.-B., V.C.1.a., V.C.1.c, V.C.1.d., V.C.2., V.C.3, and V.C.4. of the Report and Recommendation and rejects the balance of the February 24, 2015 Report and Recommendation.

6

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is DENIED, that Defendant's Motion for Summary Judgment is GRANTED, and that this matter is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 24, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager